UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re                                                                      Chapter 7
                                                                                   Case No.: 15-74795 (AST)
MAURA E. LYNCH,

              Debtor.
---------------------------------------------------------------x
R. KENNETH BARNARD, as CHAPTER 7
TRUSTEE OF THE ESTATE OF
 MAURA E. LYNCH,

              Plaintiff,                                   Adv. Pro. No.: 18-08169 (AST)
   -against-

PATRICIA M. FRANK,

              Defendant.
---------------------------------------------------------------x

**ORDER CONVERTING DEFENDANT'S MOTION TO DISMISS
TO A MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the motion to dismiss (the "Motion to Dismiss") filed by Patricia M. Frank ("Frank"), to dismiss the complaint (the "Complaint") filed by R. Kenneth Barnard, Esq., solely in his capacity as Chapter 7 Trustee ("Trustee" or "Plaintiff"). Defendant seeks dismissal of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on the grounds that the Complaint fails to state a claim upon which relief can be granted. For the reasons stated below, the Court has converted the Motion to Dismiss to one for summary judgment.

**Jurisdiction**

This court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K) and 1334(b), and the Standing Orders of Reference in effect in the Eastern

1

District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

## Factual Background and Procedural History[1]

*Procedural history*

In 2010, Stephen Vaccaro ("Vaccaro") commenced a divorce action against Maura Lynch ("Lynch" or "Debtor"), Index No. 38437-10 in New York Supreme Court, County of Suffolk (the "State Court"). Following a nine-day trial, the State Court entered an order on December 12, 2012, as amended on March 15, 2013, directing, *inter alia*, equitable distribution of the parties' assets. The State Court ordered *inter alia*, that Vaccaro and Lynch cooperate to sell the property located at 43 Harbor Drive, Sag Harbor NY ("Harbor Drive") and evenly divide the proceeds between them following the satisfaction of any outstanding mortgages, liens, and judgments. In addition, the State Court declined to appoint a receiver at that time to manage the sale of Harbor Drive, but said that it would do so if Vaccaro and Lynch could not work together, or if one of them thwarted the sale of the property.

On May 3, 2013, following a motion by Vaccaro, the State Court appointed Vaccaro as receiver for Harbor Drive based on Lynch's failure to vacate Harbor Drive and cooperate in the sale of that property. The state court further directed Lynch to leave Harbor Drive by June 30, 2013 and to make the property presentable for real estate showings.

The State Court entered a final judgment in the Divorce Action on July 16, 2013, as amended on December 23, 2013, which reiterated that Harbor Drive was to be equitably distributed.

---

[1] The factual background and procedural history are taken from the pleadings and exhibits submitted by the parties.

The State Court found Lynch in contempt on November 26, 2013 for, *inter alia*, obstructing the sale of Harbor Drive.

On or about April 8, 2014, Vaccaro entered into a contract to sell Harbor Drive to Frank for a purchase price of $1,325,000; the contract did not include a right of pre-closing possession for Frank (the "Vaccaro-Frank Contract").

On April 1, 2015, the state court replaced Vaccaro with Stephen O'Brien, Esq. ("O'Brien") as receiver and directed O'Brien to prevent waste or mismanagement of Harbor Drive and to dispose of it in accordance with its prior order. However, on Lynch's motion, the New York Appellate Division, Second Department issued an order on March 27, 2015 directing Vaccaro to show cause as to why the sale of Harbor Drive should not be stayed pending Lynch's appeal of various State Court orders, and the State Court accordingly stayed its April 1, 2015 order on April 14, 2015. Subsequently, on May 15, 2015, the Second Department denied Lynch's request for a stay of sale, and by order dated August 25, 2015, the State Court vacated its April 14, 2015 order, thereby allowing the sale of Harbor Drive to move forward.

On September 24, 2015, the State Court authorized O'Brien to retain counsel and a broker to sell Harbor Drive in accordance with the Vaccaro-Frank Contract for $1,325,000. Again, no preclosing right of possession was accorded to Frank.

Before Frank closed on the purchase of Harbor Drive, Lynch filed her voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 9, 2015.

On November 17, 2015, Frank filed a motion for an order pursuant to 11 U.S.C. § 362(d) terminating the automatic stay in order to allow Frank to proceed with her purchase (the "Stay Motion"). Frank also asked the Bankruptcy Court to stay an ancillary eviction proceeding initiated by Lynch against Frank in the Justice Court of the Town of Southampton.

Subsequently, on November 23, 2015, Vaccaro filed a motion, as amended on November 30, 2015, seeking an order pursuant to 11 U.S.C. § 543(d) excusing O'Brien's compliance with Sections 543(a) and (b) of the Bankruptcy Code (the "Excusal Motion"), thus allowing O'Brien to retain possession of Harbor Drive, rather than delivering the property to Lynch. O'Brien joined the Excusal Motion on December 2, 2015.

On December 10, 2015, this Court held an evidentiary hearing on the Stay and Excusal Motions. Vaccaro, Lynch, Frank, and O'Brien were all represented by counsel at that hearing, and O'Brien testified. After reviewing evidence submitted by the parties and hearing argument from counsel, this Court orally granted the Excusal Motion in part and denied the Stay Motion in its entirety, after first affording the parties time to privately work out a mechanism by which the value of Harbor Drive could be quickly maximized for the benefit of creditors.

The Court shortly thereafter issued an Order setting protocols for an auction (the "Auction Order") of Harbor Drive, finding that it was "in the best interests of [Lynch's] bankruptcy estate, its creditors and other parties-in-interest, for" Harbor Drive to be sold by O'Brien. The Auction Order also provided that "Frank, who signed a contract to purchase the Harbor Drive Property for $1,325,000.00 has agreed to increase her offer to $1,425,000.00 and shall be deemed a stalking horse bidder and a Qualified Bidder." However, at no point did Frank ask for buyer protections such as a break up fee.

Frank and Debtor then sought stay and/or reconsideration of the Harbor Sale Order, which were denied. In particular, Frank argued that the Bankruptcy Court (1) failed to correctly apply New York law by *sua sponte* determining that the Vaccaro-Frank Contract had "expired"; (2) deprived Frank of due process by refusing to give effect to the Vaccaro-Frank Contract; and (3) improperly denied Frank of the protections of 11 U.S.C. § 365(i), which would allow her, as

the purchaser in possession of Harbor Drive, to enforce the Vaccaro-Frank Contract. In the alternative, Frank asked this Court to stay the auction and sale of Harbor Drive pending appeal.

At a hearing on March 9, 2016, this Court orally denied Frank's motion for reconsideration. This Court determined that reconsideration of the Stay Order was unwarranted because (1) Frank's motion was untimely since it was filed more than 14 days after entry of the Stay Order; and (2) this Court did not make any mistake of law or fact in denying the Stay Motion. This Court held that the "Bankruptcy Code clearly supervenes State Court receivership orders, and this Court has statutory authority under Section 543 to excuse or condition the receiver's noncompliance with Sections 362, 542, and 543 with respect to bankruptcy of the estate which is precisely what this Court did in the receiver order entered on December 22nd." This Court also denied reconsideration of the Auction Order, and declined Frank's request for a stay of sale pending appeal; in particular, this Court again noted that 11 U.S.C. § 365(i) is inapplicable as it is limited to contracts of sale made by the debtor, and Lynch was not a party to the Vaccaro-Frank Contract.

An auction was held for Harbor Drive on February 22, 2016, and Frank was the winning bidder with the purchase price of $1,865,000.00 (the "Purchase Price"). This Court then held evidentiary hearings on February 24, 2016 and March 9, 2016 to determine whether to approve the sale of Harbor Drive to Frank. After hearing testimony and reviewing evidence, this Court found that there had been no violation of the Court's bid procedures, and found that approving the sale of Harbor Drive to Frank for the Purchase Price was in the best interest of the bankruptcy estate and, without any doubt, maximized the value of this asset to this estate.

On March 18, 2016, the Court issued an Order, which authorized O'Brien to sell Harbor Drive to Frank for the Purchase Price (the "Sale Order"). Thereafter, Frank moved on March 21,

2016 for a stay of the Sale Order pending appeal, which this Court denied by order dated March 24, 2016. In accordance with the Sale Order, O'Brien and Frank closed on the purchase of Harbor Drive on March 24, 2016, and the property deed was transferred to Frank.

Lynch appealed the Excusal Order and Frank continued her appeal of the Sale Order. The District Court consolidated the Lynch Appeal and the Frank Appeals by order dated May 10, 2016. The District Court affirmed this Court's Excusal Order and Sale Order by Order entered March 28, 2017 (the "District Court Order"). *Lynch v. Vaccaro*, 566 B.R. 290, 292 (E.D.N.Y. 2017), *aff'd sub nom. Frank v. Lynch*, 728 F. App'x 71 (2d Cir. 2018). In so doing, the District Court stated:

> Likewise, this Court "fail[s] to see how [it] could order a [$540,000] refund to the purchaser without affecting the validity of the sale." *The Charter Co.*, 829 F.2d at 1056; *see also Parker*, 499 F.3d at 622 (holding that Section 363(m) precludes granting relief that would "materially modify" the value of the sale asset). Further, allowing Frank to devalue Harbor Drive by recouping from the bankruptcy estate the premium she paid above the Contract price would implicate the policy concerns that Congress addressed by enacting Section 363(m). *See WestPoint*, 600 F.3d at 248-49 (noting that opening a final sale to an appellate challenge would encourage "a purchaser [to] demand a discount for the purchase of assets in which the terms and conditions of the sale cannot be protected from challenge even after closing the sale"). As noted, statutory mootness safeguards "the uniquely important interest in assuring the finality of a sale that is completed pursuant to 11 U.S.C. § 363(b) or (c) in bankruptcy proceedings," *id.* at 248, and thus consummation of a sale in bankruptcy greatly limits the ability of reviewing courts to fashion effective relief," *Parker*, 499 F.3d at 621.

*Lynch v. Vaccaro*, 566 B.R. at 304.

On June 25, 2018, the U.S. Court of Appeals for the Second Circuit entered a summary order affirming the District Court Order. *Frank v. Lynch*, 728 F. App'x 71 (2d Cir. 2018).

***This adversary proceeding***

On December 27 2018, the Trustee filed this adversary proceeding. He alleges, *inter alia*, as follows:

6

12. On January 25, 2016, Defendant filed a proof of claim in the sum of $125,000.00 arising from a contract deposit which she claimed to be secured against [Harbor Drive] (the "Original Claim").

13. On March 7, 2016, Defendant filed an amended proof of claim in the sum of $540,000.00 of which she claims $132,500.00 is secured by a "vendee's lien" against the [Harbor Drive] and $407,500.00 is unsecured (the "Amended Claim" [and together the "Frank Proofs of Claim"]).

. . . .

20. Vaccaro, as receiver, entered into a contract of sale with Defendant dated April 8, 2014 (the "Contract of Sale") providing for her purchase of [Harbor Drive].

21. The Debtor was the sole fee owner of the [Harbor Drive] on the date the Contract of Sale was executed.

22. The Contract of Sale scheduled a closing for June 4, 2014.

23. Upon information and belief, the closing did not proceed in June 2014 due to a stay granted to the Debtor by the Supreme Court of the State of New York.

24. Defendant moved into the Real Property when the closing did not proceed in June 2014.

25. Defendant entered into and took possession of [Harbor Drive] without the consent of either Vaccaro, as receiver, or the Debtor.

26. On April 1, 2015, the Supreme Court of the State of New York replaced Vaccaro as receiver with Stephen O'Brien, Esq. ("O'Brien").

27. Defendant was in possession of [Harbor Drive] on the date of O'Brien's appointment as substitute receiver.

28. Upon information and belief, Defendant continued to be in possession of [Harbor Drive] through March 24, 2016, when she closed on the purchase of [Harbor Drive] as the high bidder at a public auction sale for the Real Property held on February 22, 2016.

29. The Contract of Sale did not provide Defendant with a preclosing right of possession.

30. Defendant provided no consideration for her use and occupancy of [Harbor Drive] from June 2014 through March 24, 2016.

*Complaint*, Para. 12-30. [dkt item 1]

The Trustee asserts four causes of action; the first two are essentially the same – for recovery of use and occupancy by Frank of Harbor Drive from June 2014 through March 24,

7

2016 in the amount of no less than $150,000.00; and the second two are for disallowance of the Frank Proofs of Claim.

On, January 25 2019, Frank filed her Motion to Dismiss, an affidavit in support of Fredrick P. Stern, ESQ., and a memorandum of law in support. [dkt items 4, 5]

On February 21, 2019, the Trustee filed his opposition and affidavit in support (the "Opposition"). [dkt items 8, 9]

On March 6, 2019, Frank filed a reply memorandum of law in support of her Motion to Dismiss along with a declaration in further support of Fredrick P. Stern, ESQ., (the "Reply"). [dkt items 11, 12]

Both Frank and the Trustee rely on documents which are not attached to or incorporated into the Complaint.

## Discussion

*Legal Standard for the Motion to Dismiss*

This Court has addressed the application of Rule 12(b) and the flexible plausible pleading standard established by the Supreme Court on numerous occasions. *See Devices Liquidation Trust v. Pinebridge Vantage Partners (In re Pers. Commun. Devices, LLC)*, 528 B.R. 229, 233-34 (Bankr. E.D.N.Y. 2015), discussing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007); *Moxey v. Pryor (In re Moxey)*, 522 B.R. 428, 437-38 (Bankr. E.D.N.Y. 2014); *In re Ippolito*, 2013 WL 828316, at *3 (Bankr. E.D.N.Y. Mar. 6, 2013); *see also In re Int'l Tobacco Partners, Ltd.*, 462 B.R. 378, 385 (Bankr. E.D.N.Y. 2011); *In re Jones*, 2011 WL 1549060, at *2-3 (Bankr. E.D.N.Y. Apr. 21, 2011); *In re Coletta*, 391 B.R. 691, 693-94 (Bankr. E.D.N.Y. 2008).

Under the U.S. Supreme Court's *Iqbal*/*Twombly* analysis, a complaint must contain sufficient factual matter, which, when accepted as true, is adequate to "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the relief sought. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted" so as to create liability. *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Neither *Iqbal* nor *Twombly* departed from the standard that, in considering a Rule 12(b)(6) motion, a court is to accept as true all factual allegations in the complaint and draw all inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56; *see also Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). However, as the Supreme Court stated in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, a court need not "accept as true a legal conclusion couched as a factual allegation," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79 (citing FED. R. CIV. P. 8(a)(2)).

In deciding the Motion to Dismiss, this Court must limit its review to facts and allegations contained in the Complaint, documents incorporated into the Complaint by reference or attached as exhibits and matters of which this Court may take judicial notice. *Blue Tree*

*Hotels, Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 425 (2d Cir. 2008) (Courts may take judicial notice of court filings to establish that matters have been publicly asserted, but not for the truth of the matters asserted in them); *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings").  The Court may also "consider documents that are integral to the complaint . . . ." *Int'l Tobacco Partners, Ltd.*, 462 B.R. at 385; *see also Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 344 (E.D.N.Y. 2008) ("A document is integral to the complaint where the complaint relies heavily upon its terms and effects." (internal citations and quotation marks omitted)).  Further, this Court has the authority to consider "the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit." *Holmes v. Air Line Pilots Association*, 745 F. Supp. 2d 176, 198 (E.D.N.Y. 2010) (internal citations omitted).  If the documents contradict the allegations of the Complaint, the documents themselves control and the Court does not need to accept as true any contradictory allegations concerning those documents.  *Id.*

***Conversion of the Motion to Dismiss to a Motion for Summary Judgment***

Defendant asserts (a) the Complaint fails to allege a landlord-tenant relationship between the parties in connection with Franks' possession of Harbor Drive, which, according to Frank, is a requirement for a claim for relief for use and occupancy under New York law; and (b) the causes of action seeking to disallow the Frank Claims should be dismissed because "Debtor's breach of the contract by her actions which prevented the Frank Contract from closing pre-petition amounts to a rejection of the executory contract which allows Frank to seek an

allowance of her claim under Section 502." *See Memorandum of Law in Support of Defendant, Patricia M. Frank's Motion to Dismiss Pursuant To FRCP 12(b)(6).* [dkt item 6]

Plaintiff argues, however, that a landlord-tenant relationship existed because Frank took possession of Harbor Drive for temporary occupancy in exchange for repairs she was making to Harbor Drive; additionally the Complaint seeks unjust enrichment for Frank's possession of Harbor Drive. Plaintiff asserts that Frank's request for rejection damages has already been addressed by the Court in connection with the sale of Harbor Drive, Frank actively participated in the auction process by increasing her offer for Harbor Drive to $1,865,000 and thereby waived her claims.

For the Court to consider the fact-based assertions made by both parties which are not attached to or incorporated into the Complaint, the Court must convert the Motion to Dismiss to a motion for summary judgment, and afford all parties a reasonable opportunity to present material pertinent to the motion. *See* FED. R. CIV. P. 12(d); FED. R. BANKR. P. 7012(b) *Cole v. Bourke*, 2016 U.S. Dist. LEXIS 16517, at *9-10 (E.D.N.Y. Jan. 27, 2016) ("[t]he essential inquiry in determining whether it is appropriate to convert a motion to dismiss into a motion for summary judgment is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.") (internal citations and quotations omitted); *In re Gadsden*, 128 B.R. 45, 48 (Bankr. E.D.N.Y. 1991) (the bankruptcy court may treat a motion to dismiss as a motion for summary judgment if it gives both parties notice and a reasonable opportunity to submit affidavits and extraneous evidence so as to avoid taking a party by surprise).

Further, it appears to the Court that because many, but not all, of the disputes in this adversary proceeding are matters of law and not issues of fact, they may be susceptible of determination under Rule 7056.

Thus, in accordance with Rule 7001, 7012 and 7056, the Court will convert the Motion to Dismiss to one for summary judgment and afford the parties with a reasonable opportunity to submit affidavits and additional materials.

Based on the foregoing; it is hereby

**ORDERED**, that the Motion to Dismiss is hereby converted to a motion for summary judgment; and it is further

**ORDERED**, that the parties shall comply with the following deadlines: the parties shall file a joint statement of material facts pursuant to Bankruptcy Rule 7056 and Local Bankruptcy Rule 7056-1 on or before **October 15, 2019**; Frank and the Trustee may file a statement of additional facts on or before **October 29, 2019,** and each may file a response to the additional statements on or before **November 12, 2019**, and it is further

**ORDERED,** that the Trustee may cross move for full or partial summary judgment on or before **October 15, 2019,** in which case Frank may file a supplemental brief in opposition on or before **November 12, 2019**, and it is further

**ORDERED**, that this matter shall be on submission with the Court as of **November 13, 2019**.



Dated: September 20, 2019  
      Central Islip, New York

      Alan S. Trust  
      United States Bankruptcy Judge