UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re                                                                                           Chapter 7
                                                                                                 Case No.: 15-74795 (AST)
MAURA E. LYNCH,

                      Debtor.
-------------------------------------------------------------x
R. KENNETH BARNARD, as CHAPTER 7
TRUSTEE OF THE ESTATE OF
 MAURA E. LYNCH,

                      Plaintiff,                                    Adv. Pro. No.: 18-08169 (AST)
     -against-

PATRICIA M. FRANK,

                      Defendant.
-------------------------------------------------------------x

### ***ORDER GRANTING IN PART AND DENYING IN PART***
### ***CROSS MOTIONS FOR SUMMARY JUDGMENT***

Pending before the Court is the motion for summary judgment (previously Motion to Dismiss) filed by Patricia M. Frank ("Frank" or "Defendant") the ("Frank MSJ"), and the cross motion for summary judgment filed by R. Kenneth Barnard, Esq., solely in his capacity as Chapter 7 Trustee ("Trustee" or "Plaintiff" and the "Cross MSJ"). For the reasons stated below, the Court grants in part and denies in part each motion for summary judgment.

### **Jurisdiction and Venue**

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (I) and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

**Factual Background and Procedural History**[1]

## A. *Procedural history*

In 2010, Stephen Vaccaro ("Vaccaro") commenced a divorce action against Maura Lynch ("Lynch" or "Debtor"), Index No. 38437-10 in New York Supreme Court, County of Suffolk (the "State Court"). Following a nine-day trial, the State Court entered an order on December 12, 2012, as amended on March 15, 2013, directing, *inter alia*, equitable distribution of the parties' assets. The State Court ordered *inter alia*, that Vaccaro and Lynch cooperate to sell the property located at 43 Harbor Drive, Sag Harbor NY ("Harbor Drive") and evenly divide the proceeds between them following the satisfaction of any outstanding mortgages, liens, and judgments.

On May 3, 2013, following a motion by Vaccaro, the State Court appointed Vaccaro as receiver for Harbor Drive based on Lynch's failure to vacate Harbor Drive and cooperate in the sale of that property.

On or about April 8, 2014, Vaccaro entered into a contract to sell Harbor Drive to Frank for a purchase price of $1,325,000; the contract did not include a right of pre-closing possession for Frank (the "Vaccaro-Frank Contract").

On April 1, 2015, the state court replaced Vaccaro as receiver with Stephen O'Brien, Esq. ("O'Brien"), and directed O'Brien to prevent waste or mismanagement of Harbor Drive and to dispose of it in accordance with its prior sale order. The state courts temporarily stayed the sale of Harbor Drive, but ultimately authorized O'Brien to proceed with the Vaccaro-Frank Contract.

On November 9, 2015, before Frank closed on the purchase of Harbor Drive, Lynch filed her voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").

---

[1] The factual background and procedural history are taken from the pleadings and exhibits submitted by the parties.

On November 17, 2015, Frank filed a motion for an order pursuant to 11 U.S.C. § 362(d) terminating the automatic stay in order to allow Frank to proceed with her purchase (the "Stay Motion"). Frank also asked the Bankruptcy Court to stay an ancillary eviction proceeding initiated by Lynch against Frank in the Justice Court of the Town of Southampton.

Subsequently, on November 23, 2015, Vaccaro filed a motion, as amended on November 30, 2015, seeking an order pursuant to 11 U.S.C. § 543(d) excusing O'Brien's compliance with Sections 543(a) and (b) of the Bankruptcy Code (the "Excusal Motion"), thus allowing O'Brien to retain possession of Harbor Drive, rather than delivering the property to Lynch. O'Brien joined the Excusal Motion on December 2, 2015.

On December 10, 2015, this Court held an evidentiary hearing and granted the Excusal Motion (the "Excusal Order") in part and denied the Stay Motion in its entirety (the "Stay Order"), after first affording the parties time to privately work out a mechanism by which the value of Harbor Drive could be quickly maximized for the benefit of creditors.

The Court shortly thereafter issued an Order setting protocols for an auction of Harbor Drive, finding that it was "in the best interests of [Lynch's] bankruptcy estate, its creditors and other parties-in-interest, for" Harbor Drive to be sold by O'Brien by auction (the "Auction Order"). The Auction Order also provided that "Frank, who signed a contract to purchase the Harbor Drive Property for $1,325,000.00 has agreed to increase her offer to $1,425,000.00 and shall be deemed a stalking horse bidder and a Qualified Bidder." However, at no point did Frank ask for buyer protections such as a breakup fee.

Frank and Debtor then sought stay and/or reconsideration of the Auction Order, which were denied. In particular, Frank argued that the Bankruptcy Court (1) failed to correctly apply New York law by *sua sponte* determining that the Vaccaro-Frank Contract had "expired"; (2)

deprived Frank of due process by refusing to give effect to the Vaccaro-Frank Contract; and (3) improperly denied Frank of the protections of 11 U.S.C. § 365(i), which would allow her, as the purchaser in possession of Harbor Drive, to enforce the Vaccaro-Frank Contract. In the alternative, Frank asked this Court to stay the auction and sale of Harbor Drive pending appeal.

At a hearing on March 9, 2016, this Court orally denied Frank's motion for reconsideration. This Court determined that reconsideration of the Stay Order was unwarranted because (1) Frank's motion was untimely since it was filed more than 14 days after entry of the Stay Order; and (2) this Court did not make any mistake of law or fact in denying the Stay Motion. This Court held that the "Bankruptcy Code clearly supervenes State Court receivership orders, and this Court has statutory authority under Section 543 to excuse or condition the receiver's noncompliance with Sections 362, 542, and 543 with respect to bankruptcy of the estate which is precisely what this Court did in the receiver order entered on December 22nd." This Court also denied reconsideration of the Auction Order, and declined Frank's request for a stay of sale pending appeal; in particular, this Court again noted that 11 U.S.C. § 365(i) is inapplicable as it is limited to contracts of sale made by the debtor, and Lynch was not a party to the Vaccaro-Frank Contract.

An auction was held for Harbor Drive on February 22, 2016, and Frank was the winning bidder, for a purchase price of $1,865,000.00 (the "Purchase Price"). This Court then held evidentiary hearings on February 24, 2016 and March 9, 2016 to determine whether to approve the sale of Harbor Drive to Frank. After hearing testimony and reviewing evidence, this Court found that there had been no violation of the Court's bid procedures and found that approving the sale of Harbor Drive to Frank for the Purchase Price was in the best interest of the bankruptcy estate and, without any doubt, maximized the value of this asset to this estate.

On March 18, 2016, the Court issued an Order, which authorized O'Brien to sell Harbor Drive to Frank for the Purchase Price (the "Sale Order"). Thereafter, Frank, even though she was the successful purchaser, moved on March 21, 2016 for a stay of the Sale Order pending appeal, which this Court denied by order dated March 24, 2016. In accordance with the Sale Order, O'Brien and Frank closed on the purchase of Harbor Drive on March 24, 2016, and the property deed was transferred to Frank.

Lynch appealed the Excusal Order and Frank continued her appeal of the Sale Order. The District Court consolidated the Lynch Appeal and the Frank Appeals by order dated May 10, 2016. The District Court affirmed this Court's Excusal Order and Sale Order by Order entered March 28, 2017 (the "District Court Order"). *Lynch v. Vaccaro*, 566 B.R. 290, 292 (E.D.N.Y. 2017), *aff'd sub nom. Frank v. Lynch*, 728 F. App'x 71 (2d Cir. 2018).

On June 25, 2018, the U.S. Court of Appeals for the Second Circuit entered a summary order affirming the District Court Order. *Frank v. Lynch*, 728 F. App'x 71 (2d Cir. 2018).

### B. *This adversary proceeding*

On December 27, 2018, the Trustee filed this adversary proceeding. He alleges, *inter alia*, that Frank's pre-petition contract to purchase Harbor Drive did not provide her with a preclosing right of possession, that she in fact did occupy the property without permission, and that she provided no consideration for her use and occupancy of the property. The Trustee seeks recovery of the value of her use and occupancy from June 2014 through the Petition Date, and thereafter until March 24, 2016, when she closed on the purchase of Harbor Drive from the Trustee. The Trustee also notes that Frank filed an amended proof of claim in the sum of $540,000.00 of which she claims $132,500.00 is secured by a "vendee's lien" against Harbor

Drive, and $407,500.00 is unsecured (the "Amended Claim"). He seeks disallowance of the Amended Claim. [dkt item 1]

On January 25, 2019, Frank filed her Motion to Dismiss, an affidavit in support of Fredrick P. Stern, Esq., and a memorandum of law in support. [dkt items 4, 5]

On February 21, 2019, the Trustee filed his opposition and affidavit in support (the "Opposition"). [dkt items 8, 9]

On March 6, 2019, Frank filed a reply memorandum of law in support of her Motion to Dismiss along with a declaration in further support of Fredrick P. Stern, ESQ., (the "Reply"). [dkt items 11, 12]

On September 20, 2019, this Court entered the Order Converting Defendant's Motion to Dismiss to a Motion for Summary Judgment (the "Conversion Order") on the ground that both Frank and the Trustee relied on documents which were not attached to or incorporated into the Complaint, and for the Court to consider these fact-based assertions, it must convert the motion to dismiss to one for summary judgment and afford all parties a reasonable opportunity to present materials pertinent to the motion. [dkt item 13] The Conversion Order established related deadlines for the parties in connection with defendant's motion for summary judgment and the filing of plaintiff's cross motion for summary judgment.

On October 11, 2019, in accordance with the Conversion Order, the Trustee and Frank filed a Joint Statement of Material Facts as to which there is no genuine issue to be tried (the "Joint Statement"). [dkt item 14]

On October 15, 2019, the Trustee filed Trustee's Statement of Additional Material Facts as well as a Cross Motion for Summary Judgment. [dkt items 15, 16]

On October 29, 2019, Frank filed Patricia Frank's Statement of Additional Material Facts. [dkt item 18]

On November 12, 2019, Frank filed an Opposition to Trustee's Cross Motion for Summary Judgment and a Response to Trustee's Statements of Additional Material Facts. On that same day, the Trustee filed his Response to Frank's Statements of Additional Facts and a letter incorporating the earlier Opposition in response to Frank's Motion to Dismiss, which is now converted to a Motion for Summary Judgment. [dkt items 19-22]

## **Findings of Fact and Conclusions of Law**

The Court is not required to state findings of fact and conclusions of law when ruling on summary judgment motions, pursuant to FRCP 52(a)(3), as incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## **Discussion**

### *A. Legal Standard for the Motions for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7056(c), provides that summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Id.* If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (internal citations omitted).

The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp.*, 477 U.S. at 330 n.2 (1986) (Brennan, J., dissenting)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995); *Burrell v. City Univ. of New York,* 894 F. Supp. 750, 757 (S.D.N.Y. 1995). "If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001); *see Burrell*, 894 F. Supp. at 758 (citing *Binder v. Long Island Lighting Co*., 933 F.2d 187, 191 (2d Cir. 1991)).

### B. *The Trustee's Right of Recovery for Frank's Use and Occupancy of Harbor Drive*

The Trustee argues that he is entitled to the recovery of money damages from Frank arising from her unauthorized occupancy of Harbor Drive because the undisputed facts demonstrate the existence of a *de facto* landlord-tenant relationship. [dkt item 16] The Trustee alternatively seeks recovery based on unjust enrichment. Under each theory he seeks recovery for the period from June 2014 through March 24, 2016. [dkt item 16]

Frank asserts that the Trustee failed to carry his burden in showing a lack of genuine issues of material fact, because a landlord-tenant relationship did not exist between the seller of Harbor

Drive and Frank because no rents were collected, and because no permit to collect rents was obtained as required by Southampton law governing rental of residential property. [dkt item 19] Frank further contends that the Trustee in fact benefited from her repairs and maintenance of Harbor Drive during her occupancy of the property.

The appropriate analysis here is to divide the pre-petition occupancy period from the post-petition. Frank began her occupancy of the Harbor Drive property as a vendee-in-possession after she and Vaccaro signed the Vaccaro-Frank Contract, but that contract never closed. She then maintained occupancy from the Petition Date through closing, without authorization of this Court.

1. ***Pre-petition occupancy: Frank does not have to pay rent for her use and occupancy of Harbor Drive as a vendee-in-possession, unless a lease exists between her and Vaccaro.***

The first issue is whether a vendee-in-possession has to pay for pre-closing possession of the property being sold. The general answer is no, unless there is a lease calling for the payment of rent:

> It is well settled that the legal owner of real property is not entitled to an award for use and occupancy from a contract vendee in possession unless there also exists a landlord-tenant relationship between the parties . . . . An intention to deviate from the general rule and to avoid a merger may be directly expressed in the agreement or may be inferred from a medley of factors such as the terms of the agreement, the circumstances of its making, and the subsequent behavior of the parties.

*Blackburn Food Corp. v Ardi, Inc.*, 189 A.D.3d 1329, 139 N.Y.S.3d 303, 306–07 (2020), citing *Barbarita v Shilling*, 11 A.D.2d 196, 201–202, 202 N.Y.S.2d 659 (1960). In *Blackburn*, the court found that because the tenant-buyers validly exercised their option to purchase and the contract did not show the parties' intention to deviate from the general rule, the landlord-tenant relationship was terminated and the buyers who became vendees-in-possession needed not to pay rent. *Id*. By contrast, the Appellate Court in *Lelekakis* determined that the parties were never in a vendor-vendee relationship because the option to purchase was never effectively exercised due to the title

9

defect of seller, and therefore, sellers were entitled to recover for use and occupancy for the entire period in which buyer occupied the subject premises. *Lelekakis v. Kamamis*, 41 A.D.3d 662, 665, 839 N.Y.S.2d 773, 777 (2007).

The relationship in this case is less straightforward than that in *Blackburn* and *Lelekakis*. Here, there was no specific written agreement requiring rent to be paid for Frank's pre-closing occupancy. The Joint Statement stipulates that the Vaccaro-Frank Contract did not provide Frank with a pre-closing right of possession of Harbor Drive, and that there is no separate written agreement between Frank and Vaccaro expressly authorizing her to take possession. [dkt item 14] However, there is also no written lease.

The Trustee's Cross MSJ states that Frank had engaged in discussions of the terms of Frank's pre-closing occupancy with Vaccaro and O'Brien, and planned to give the seller credit for Frank's 18-month occupancy to circumvent the Southampton local law requiring a rental permit be obtained before a property may be leased. [dkt item 16, p. 11-12] and The Trustee acknowledges that Vaccaro and Frank "submitted conflicting declarations as to whether he [Vaccaro] requested Defendant [to] pay rent." [dkt item 16, FN 2]. These preliminary negotiations alone are insufficient to prove the existence of a lease; there would have to be a meeting of the minds on the terms of a lease.

However, is unclear if the subsequent behavior of the parties is adequate to create the materials terms of a lease. *See Blackburn Food Corp.*, 139 N.Y.S.3d at 306–07. Frank admits that her repairs of Harbor Drive were made in exchange for her occupancy, which is similar to how a tenant pays a landlord rent. In the Joint Statement, Frank testifies: "Mr. Vaccaro did not request that I pay any rent at that time since I would be making substantial repairs to the Real property in order to make it livable. He did request that I forward to him a letter indemnifying him from any

liability regarding the repairs." [dkt item 14, Exhibit C, ¶ 9]. Frank also testified that she moved into Harbor Drive because the closing was scheduled and not long after the contract was signed based on her understanding that Vaccaro agreed to her moving in: "so he said, 'if you move in and pay for the repairs and indemnify me that will be ok because I know we're closing in a few weeks.'" [dkt item 14, p. 4] In the Joint Statement, Frank's counsel admitted there was written evidence "supporting Ms. Frank's use and occupancy of 43 Harbor" and referred to the indemnity letter from Vaccaro as "an agreement" that permitted her occupancy [dkt item 14, p.2]. But in her Response to the Trustee's Cross MSJ, Frank contends that there was no meeting of the minds between Frank and Vaccaro about paying rent. [dkt item 19, p. 4]

This Court denies summary judgment on the Trustee's de facto tenant theory, as the proper inquiry is the vendee-in-possession issue addressed above.

Thus, the record before this Court creates a genuine issue of material fact as to whether there was a lease or any agreement to pay rent between Vaccaro and Frank concerning her pre-closing and thus pre-petition occupancy of Harbor Drive, and the Trustee's Cross MSJ on this issue should be denied.

2. *Post-petition occupancy: Frank's status as a vendee-in-possession terminated by this bankruptcy filing and she should pay rent for her use and occupancy without court approval.*

There is no genuine issue of material fact that Frank was a holdover whose vendee-in-possession status terminated upon the Petition Date. Once this bankruptcy was filed, title and associated rights to Harbor Drive vested in the bankruptcy estate. As has been previously noted by this Court, Debtor was not a party to the Vaccaro-Frank Contract, and that contract was not assumed by the bankruptcy estate. As noted, a separate auction sale process was established by this Court, and Harbor Drive was sold under Orders of this Court and not under the pre-petition

11

Vaccaro-Frank Contract. At no time did this Court authorize Frank to remain in possession of Harbor Drive rent-free, and at no time was Frank declared a vendee-in-possession of Harbor Drive post-petition. Frank agreed to become the stalking horse bidder in the auction sale with no bid protections and no acknowledgement of her right to occupy Harbor Drive post-petition. She actively participated in the auction process, appealed from the Sale Order, and ultimately closed pursuant to this Court's auction process. Therefore, Frank was not a vendee-in-possession between the Petition Date and the sale closing date.

In the absence of a vendor-vendee relationship, New York courts have consistently granted use and occupancy damages to the real property owner for unpermitted possession of the premises, noting that "an obligation to pay use and occupancy in the absence of privity could be implied in law." *Ministers, Elders & Deacons of Reformed Protestant Dutch Church of City of New York v. 198 Broadway, Inc.*, 152 Misc. 2d 936, 940–42, 579 N.Y.S.2d 543, 546–47 (1991); *see also Rand Products Co., Inc. v. Mintz*, 72 Misc.2d 621, 622, 340 N.Y.S.2d 444 (1973).

Thus, the Trustee is entitled to judgment as a matter of law for Frank's post-petition use and occupancy, in an amount to be established at trial.

### C. *Pre-petition and Post-petition Unjust Enrichment*

The Trustee is entitled to summary judgment that Frank was unjustly enriched by her use and occupancy of Harbor Drive post-petition, but not pre-petition. Under New York Law, unjust enrichment "lies as a quasi-contract claim" and "contemplates 'an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.'" *Georgia Malone & Co. v Rieder*, 19 NY3d 511, 516, 973 N.E.2d 743, 950 N.Y.S.2d 333 (2012); *IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142, 907 N.E.2d 268, 879 N.Y.S.2d 355 (2009) (quoting *Goldman v Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, 841 N.E.2d 742, 807 N.Y.S.2d

583 (2005)). The Trustee has the burden of proving that "(1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *MTS NY Lessee, L.P. v Eden H., Inc.,* No. 656112/2017, 2019 WL 5212874, at *8 (N.Y. Sup. Ct. Oct. 16, 2019) (quoting *GFRE, Inc. v U.S. Bank, N.A.*, 130 A.D.3d 569, 570, 13 N.Y.S.3d 452 (2d Dept. 2015)); *see also Mobarak v. Mowad*, 117 A.D.3d 998, 1001, 986 N.Y.S.2d 539 (2nd Dept. 2014).

The remedy of unjust enrichment is only available "in the absence of an actual agreement between the parties concerned." *IDT Corp.* at 142, quoting *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.,* 70 N.Y.2d. 382, 388, 516 N.E.2d. 190, 521 N.Y.S.2d. 653 (1987). Thus, a plaintiff is precluded from relief on an unjust enrichment claim if "the parties executed a valid and enforceable written contract governing a particular subject matter." *Id.* However, if a bona fide dispute exists as to the existence, or applicability, of a contract, the plaintiff may proceed on quasi-contract theories like unjust enrichment. *Pressley v. Ford Models*, No. 653001/2016, 2018 WL 2136448, at *6 (N.Y. Sup. Ct. May 09, 2018).

As discussed *supra*, a genuine dispute of the material fact exists as to whether a lease exists between Frank and Vaccaro that requires her to pay pre-petition rent, and unjust enrichment is not available for the Trustee on Frank's pre-petition occupancy of Harbor Drive. However, the Vaccaro-Frank Contract was not assumed post-petition and this Court did not authorize Frank's continued use and occupancy of Harbor Drive rent-free. Because there was no actual or written agreement post-petition between the parties, the Trustee may recover on the theory of unjust enrichment for Frank's occupancy from the Petition Date to the closing date.

The Trustee's Cross MSJ on his first and second claims for relief is thereby granted as to the months of Frank's use and occupancy pre-closing during the post-petition months only.

### D. *Disallowance of Frank's Amended Claims*

The Trustee is entitled to a judgment as a matter of law for his third and fourth claims for relief under 11 U.S.C. § 502(b), (d) and (j) the disallowance of Frank's Amended Claims. When this Court denied Frank's request for protection under 11 U.S.C. § 365(i) to enforce the Vaccaro-Frank Contract, this Court determined that she did not have an enforceable pre-petition right to purchase the property. That decision was affirmed by the District Court and the Second Circuit.

In her Amended Claims, Frank seeks to recover the difference between the amount she was to pay under the Vaccaro-Frank Contract and the price she paid in the auction sale. She splits this $540,000 difference into (1) $132,500 down payment as a secured claim (which was later used as a credit deducted against Frank's purchase) and (2) $407,500 as an unsecured claim. [dkt item 14 p. 4]

The Trustee properly relies on the common law doctrines of collateral estoppel (issue preclusion) and res judicata (claim preclusion) to preclude Frank from relitigating claims and issues that have already been decided. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in the first action).

Issue preclusion requires the asserting party to prove that "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate the issue in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Washington v. New York City Dep't of Educ.*, 740 F. App'x 730, 732 (2d Cir. 2018) (quoting *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001)).

For the identity of issues, courts do not require exact duplication and allow substantial similarities. "As the Supreme Court observed, relitigation will be barred where 'the issues presented by this litigation are in substance the same as those resolved' in the prior case." *Guo Zhong Wu v. Qiao Lin (In re Qiao Lin)*, 576 B.R. 32, 59 (Bankr. E.D.N.Y 2017) (quoting *Montana v United States*, 440 U.S. 147, 155, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979)). Courts agree that "direct identity is not required, and substantial identity will suffice." *Qiao Lin*, 576 B.R. at 59. Preclusion "depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *NLRB v. United Technologies, Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983) (citation omitted).

"Actually litigated" means that "when a question of fact is put in issue by the pleadings, is submitted to the trier of fact for its determination, and is determined, that question of fact has been actually litigated." *In re Red Dot Scenic, Inc.*, 313 B.R. 181, 187 (Bankr. S.D.N.Y. 2004) (internal quotation omitted) (holding that res judicata applied to the former shareholder's claim arising from the same transaction as the final judgment obtained by the Trustee against the shareholder in an adversary proceeding); *see also Wilson v. Pfeiffer*, 565 F. Supp. 115, 117 (S.D.N.Y. 1983); 18 Wright, Miller and Cooper Federal Practice and Procedure § 4419 (2d ed. 2004) at 499-502 ("As to issue preclusion, it is also said that preclusion applies to any issue framed by the pleadings and not withdrawn, even though it has not been raised at trial in any way.").

Finality for the purposes of issue preclusion "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961). Thus, courts should examine "the nature of the decision (i.e., that it was not avowedly

tentative), the adequacy of the hearing, and the opportunity for review." *Id*. (internal quotations omitted); *see also Restatement (Second) of Judgments* § 13, cmt. a (noting that an interlocutory order that is not yet appealable may be given collateral estoppel effect where it is firm stable, or the "last word" of the rendering court on a particular issue).

Here, there is no dispute that Frank previously litigated the same issue of her entitlement to rejection damages in her previous motion seeking a stay pending appeal where, on March 24, 2016, this Court found that her "reliance on Section 365(i) [was] both unavailing and simply unpersuasive" because Frank and the debtor had no contract to reject. [dkt item 16, citing Exhibit 3 to the Trustee's Statement, 97:25-98:24; Trustee's Statement, ¶ 15]. Frank stipulated to the accuracy of this statement for summary judgment purposes. [dkt item 20] This District Court, consolidated Frank's three appeals with Debtor's appeals, and then affirmed this Court's rulings. The Second Circuit also affirmed the sale of Harbor Drive. [dkt item 16, citing Exhibits 5 and 6 to Trustee's Statement]; *see Lynch v. Vaccaro*, 566 B.R. 290 (E.D.N.Y. 2017), aff'd sub nom. *Frank v. Lynch*, 728 F. App'x 71 (2d Cir. 2018).

These decisions are final judgments on the merits of Frank's claims. Among the consolidated appeals, the Debtor sought to invalidate the sale in its entirety while Frank sought a reduction in the purchase price. *Id.* With respect to Frank's appeals, the District Court determined that

> Like the Excusal Order, the Stay and Reconsideration Orders were both integral to the sale of Harbor Drive because they were necessary precursors to Frank's eventual purchase of that property at auction, and the Sale Order clearly falls within the ambit of Section 363(m) because it approved a sale pursuant to 11 U.S.C. § 363(b). (R. at 1726.) In other words, reversal of the Stay Order or the Reconsideration Order—which also denied reversal of the Auction Order—would necessarily undo the sale of Harbor Drive, and thus, Section 363(m) applies.

*Id.*

The Second Circuit affirmed that the Debtor's and Frank's appeals surrounding the sale order for Harbor Drive were moot under Section 363(m). Also, during her active participation in the bidding process, Frank at no time pursued any bid protection or recognition of any alleged damages arising from any alleged contract rejection, and instead, only sought protection in the form of a minimum overbid on her stalking horse offer. Frank is attempting to relitigate the issue of rejection damages and any challenges to the sale order that have already been denied on appeal.

1. *Identity of Issues*

There is no genuine issue of the material fact that the issues presented by the Amended Claims and rejection damages are identical issues to those affirmed on appeal in the denial of stay pending appeal. Under the somewhat lenient standard for identity of issues, the two claims raised by Frank in the appeal of the sale order and in this adversary proceeding are substantially identical. In her previous appeal to the District Court, Frank sought "repayment of the differential between the Contract price and the Purchase Price for Harbor Drive, i.e. $540,000." *Lynch v. Vaccaro*, 566 B.R. at 294. In the instant proceeding, Frank seeks the same amount under a slightly different legal theory of rejection damages in her MSJ. These claims arise from the same series of transactions as her prior claims and cite to the same alleged evidence and facts [dkt item 5, p.6]. Therefore, the Trustee is entitled to judgment as a matter of law that Frank is attempting to relitigate issues identical to prior judgments.

2. *Actually litigated and decided*

An issue is "actually litigated" so long as it is asserted in the pleadings, submitted to the trier of fact for its determination, and is determined. Frank raised her claims before this Court when she moved on March 21, 2016 for a stay of the Sale Order pending appeal, which this Court denied by order dated March 24, 2016, and later affirmed by the District Court.

### 3. *Necessary to support a final judgment on the merits*

The District Court Order satisfies the requirements of a "final judgment" on the merits of Frank's claims because it discusses the merits of Frank's claims in great detail, cites multiple cases with similarity, and found that the claims lack merit. The District Court Order, affirmed by the Second Circuit, rejects Frank's appeal of the Sale Order after a detailed discussion on the merits of the claims, including the substantial injury of the bankruptcy estate that would be caused in staying the Sale Order or reducing the purchase price, and the policy behind 11 U.S.C. §363(m) of offering post-sale protections to the estate. *See Lynch v. Vaccaro*, 566 B.R. at 304.

Therefore, issue preclusion should be applied here to disallow Frank from relitigating her claim for rejection damages.

In addition, Frank's claim for recovery of her pre-petition down payment of $132,500 has no valid basis because that down payment was applied to her purchase of Harbor Drive from the Trustee [dkt item 14 p. 4].

Therefore, Frank's Amended Claims are precluded and should be disallowed under Section 502(b), (d) and (j).

## Conclusion

Based on the foregoing, and after due deliberation, and for good cause shown, its hereby

**ORDERED**, that Plaintiff's Cross MSJ is denied in part as to pre-petition recovery on claims one and two; and it is further

**ORDERED**, that Plaintiff's Cross MSJ is granted in part as to post-petition recovery on claims one and two; and it is further

**ORDERED**, that Plaintiff's Cross MSJ is granted as to claims three and four, thereby disallowing Frank's Amended Claims; and it is further

**ORDERED**, that this Court will issue a scheduling order to set a trial on the remaining issues.



Dated: April 30, 2021
      Central Islip, New York

Alan S. Trust
Chief United States Bankruptcy Judge